(173 App. Div. 1001; 94 Misc. Rep. 628)
### In re DUNFEE.

(Supreme Court, Appellate Division, Fourth Department.   May 24, 1916.)

BANKRUPTCY ⬅426(1)—DISCHARGE—OBTAINING PROPERTY BY FALSE PRE-
TENSES—"PROPERTY."

The act of the judgment debtor in proceedings supplementary to exe-
cution in obtaining a surety company to become surety upon his bond
to executors, to obtain from them moneys claimed by the judgment
debtor, was not obtaining property from the surety company within
Bankr. Act July 1, 1898, c. 541, § 17, 30 Stat. 550 (U. S. Comp. St. 1913, §
9601), providing that a discharge releases a bankrupt from all his prov-
able debts except liabilities for obtaining property by false pretenses or
representations; the giving of a bond or the becoming a surety upon a
bond not being a parting with "property."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 787, 792;
Dec. Dig. ⬅426(1).

For other definitions, see Words and Phrases, First and Second Series,
Property.]

In the matter of the examination of Joseph Dunfee, judgment debt-
or, in proceedings supplementary to execution, upon the application
of Frank Hasbrouck, as receiver, etc.   On motion to vacate an order
for the examination of the judgment debtor.   Order vacated.

The following is the opinion of CADY, County Judge.

In May, 1906, the Empire State Surety Company became surety upon the
bond of the judgment debtor, Joseph Dunfee, given to the executors of the
estate of John Dunfee, deceased, for the purpose of obtaining from such
executors certain moneys claimed by said Joseph Dunfee.   The condition
of such bond was, substantially, that if the sum so claimed by said Joseph
Dunfee was paid or advanced to him, and it should subsequently be de-
termined that he was not entitled thereto, then the sums so advanced or paid
would be returned to such executors.   Subsequently the Empire State Surety
Company, as such surety, was compelled to, and did, repay the said execu-
tors upwards of the sum of $20,000.   In the year 1912 an action was brought
by the Empire State Surety Company against Joseph Dunfee to recover from
him the amount which the Surety Company had been so compelled to pay,
and in the complaint in such action it was alleged that Joseph Dunfee in-
duced and procured the said Surety Company to become surety upon the said
bond by falsely and fraudulently representing and stating his financial condi-
tion in writing.   In this action, upon such grounds, Frank Hasbrouck, as su-
perintendent of insurance and receiver of the Empire State Surety Company,
recovered a judgment about March 9, 1915, against Joseph Dunfee for the
sum of $27,000, and in December of that year an order was made by the
county judge of Onondaga county for the examination of the judgment debtor
in proceedings supplementary to execution upon such judgment.

In the year 1913, and while the above action was pending, Joseph Dunfee
was adjudged a bankrupt, and afterwards, and by an order of the United
States District Court, entered April 14, 1915, after due notice to the Empire
State Surety Company, or its receiver, was discharged from all debts which
were dischargeable under and by virtue of the act of Congress entitled "An
act to establish a uniform system of bankruptcy throughout the United
States."   The judgment debtor, Joseph Dunfee, maintains that his discharge
in bankruptcy discharged and released him from any and all liability upon
the judgment so recovered by the receiver of the Surety Company, and by
his attorneys has moved to vacate the order for his examination in pro-
ceedings supplementary to execution upon the judgment so recovered against
him.

The Bankrupt Law (section 17) provides: "a. A discharge in bankruptcy
shall release a bankrupt from all his provable debts, except such as (1) are

due as a tax; * * * (2) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another." Obtaining the bond, or rather obtaining the Surety Company to become surety upon his bond, was not, in my opinion, obtaining property from the Surety Company. While it is true that the execution of the bond by the Surety Company, as surety, enabled Dunfee to obtain property from the executors of John Dunfee's estate, it is not claimed that he (Joseph Dunfee) made false statements to such executors, or that they had any knowledge that he made false statements to the Surety Company to induce it to become his surety. The Surety Company furnished Dunfee with credit upon which he obtained the money or property. It did not part with "property."

My attention has been called to numerous decisions, both in the state and federal courts, defining the word "property," and in no case do I find the meaning of the word so enlarged as to include the giving of a bond, or the becoming a surety upon such a bond, as parting with "property." Upon the other hand, I do find that the reported cases, including the case of In re Tanner (D. C.) 192 Fed. 572, 27 Am. Bank. R. 615, which is almost directly in point, uniformly exclude the giving of a bond, or the becoming of a surety upon a bond, in the definition of the word "property."

It is therefore concluded that, under the provision of the Bankrupt Law heretofore referred to, the judgment debtor, Joseph Dunfee, was released and discharged from the debt and obligation out of which the judgment was obtained, and upon which the order for his examination in proceedings supplementary to execution was granted, and that such order should be vacated. Ordered accordingly.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Lyman, Canough & Higbee, of Syracuse, for the motion.
Hirsh, Newman & Reass, of Brooklyn, opposed.

PER CURIAM. Order affirmed, with $10 costs and disbursements, upon the opinion of Cady, County Judge.

---

(96 Misc. Rep. 63)

KOELBLE v. WOODS, Police Com'r, et al.

(Supreme Court, Special Term, Kings County. July 3, 1916.)

SUNDAY &ominus;6(1)—CONSTRUCTION OF STATUTE—"PUBLIC SPORTS, EXERCISES, OR SHOWS."

An advertised celebration to be held at a speedway on Sunday, to which an admission fee was to be charged, and the proceeds of which, less the expenses, were to be given for charitable purposes, and at which there were to be marathon races, as well as general athletics, to demonstrate the value of physical training, and to allow men of alien birth or stock to attest their patriotism in a manner most appropriate to them, was within Penal Law (Consol. Laws, c. 40) § 2145, prohibiting "public sports, exercises, or shows" on Sunday, so that the police commissioner's execution of his intention to prevent it would not be enjoined.

[Ed. Note.—For other cases, see Sunday, Cent. Dig. §§ 11, 12; Dec. Dig. &ominus;6(1).

For other definitions, see Words and Phrases, Second Series, Public Sport; Public Show.]